13-6284, Ethan Bernstein, Warren, O'Neal Assistant State's Attorney Brian Levitsky for the people of the state of Illinois Welcome back. I've seen you before Mr. Levitsky. All right, we're going to allow each of you about 15 minutes for your remarks and from that, I'm sure you may save up some time for rebuttal. Okay, thank you. All right. Good morning, Your Honor. Good morning. Counsel, and again, I'm Rob Melching here on behalf of Defendant Juwan O'Neal. And if I could, could I please have those few minutes for rebuttal? Certainly. Your Honor, there are a lot of issues involved in this case. I'll try my best to reach all of them. But essentially, at the very least, this Court must reverse Juwan's convictions and remand for new trial pursuant to Argument 2. So is that your biggest and your strongest point? I'm going through an order of relief. All right, but you do request a new trial and remand, yes? If pursuant to Argument 2, the relief would be a new trial and remand. But this Court can resolve the inconsistency by granting relief pursuant to Argument 1. All right. By reversing the felony murder. And then there would be no further inconsistency. All right. So that's something that's got to give, given these inconsistent verdicts. And underlying all of this are the instructional errors discussed in Arguments 3 and 4, which caused inconsistent verdicts and which demanded a new trial. All those issues are related to the same basic problem, and that is jury found the killing mitigated based on the circumstances in the scene and convicted him of a second-degree murder. But despite that verdict, the judge entered judgment on first-degree murder as felony murder predicated on the same shooting that the jury found mitigated. And then they sentenced him to 70 years. This is unacceptable. This is not the purpose of felony murder. Supreme Court has in several ways made clear that felony murder is not meant to nullify second-degree murder. The state can, of course, make any second-degree murder into a felony murder by pulling some predicate act out of it and using it as the predicate act for felony murder. That's not felony murder's purpose. Felony murder was created to punish defendants who would not otherwise be punished as murderers after they consciously committed some felony and someone died. As described by Juan in his Argument 1, this felony murder conviction must be reversed because the Supreme Court has created rules to prevent this conviction in these circumstances. The first of these rules is the independent felonies purpose rule, as created by Morgan and Pell. This rule was made to prevent the results in this case. Morgan expressed a fear that allowing the state to gain a felony murder conviction in these circumstances would effectively eliminate the second-degree murder statute. As most recently stated in this court in Davidson, the ultimate inquiry under this rule is whether the predicate felony involved conduct with a felonious purpose apart from the killing itself. Okay, the felonious purpose apart from the killing itself. Yes, Your Honor. All right, so we've got these three First District cases. Figueroa. Yes, Your Honor. And Tony and what? McGee. McGee, yes. And so in those cases, the First District in three different cases said that the felonious purpose when you shoot into a rival gang member's car is different than the killing that resulted to someone else. Right? I believe so, Your Honor. How do we, give us a good way we... Yes. I think the baseline difference between all those cases is the defendants in all those cases entered into the conduct with the intent to commit a forcible felony. And McGee, the defendant drove to an open-air drug market looking for his enemy, and then they saw each other in a gun battle with a student and a child was struck. And Tony, the defendant dropped off his friend so he could go fire at rival gang members, and then somebody died. Figueroa, they exchanged gang signs, got in a car, there was a car chase, he shot the gun, and then somebody died. Here, let me ask. Does someone have a felonious intent when they sort of self-proclaim, I'm going to be security, and if I need to kill somebody or shoot somebody and I have a gun, I'm going to do that. Is that something that is permissible? Or is there no felonious intent? I'm going to keep a gun at a party on the street, and in case somebody gets out of line, you know, I'm going to use my gun. So what is it about that, that that's not a felonious intent? Yes, so there's two different things involved there. First off, obviously, a possessory offense is not a forcible felony in order to serve the purpose. Yes, I'm not talking about that. I just wanted to get that out of the way. When in the heat of an argument or, you know, somebody walks in on their spouse or something and they end up killing someone or they defend themselves because somebody's attacking them, you know, that's clear. But when you kind of take this advanced position about, you know, I'm going to be security, I'm going to take care of any business that might come up. So you're saying there's no felonious intent here and that when he was shooting into the van, we don't have anything like that? Okay, so first off, so far as the evidence of trial regarding that he was acting in security and stuff like that, the jury found based on those facts that he did, in fact, believe he was acting in self-defense and should have returned the verdict on that basis. Yes. So there's two different lines of argument. Under the Independent Felony Purpose Rule, there's a first argument that that, okay, that was his, that was his, whether or not, you know, he should have had that gun. It was imperfect self-defense, not perfect self-defense. Yes. And that's what they found. And that was, I think, no matter what, that was his constant intent. It would be his intent the entire time. Independent Felony Purpose requires a purpose apart from that kill. Sure. And in this Tony and McGee and Figueroa, all sort of gang-related cases, the first thing the court looked at and kind of determined was that shooting into a gang member's car or shooting at was a felonious purpose apart from the actual death. So I'm not sure how you put this next to Morgan and what he held. I mean, how do you reconcile? Has the Supreme Court really weighed in on this kind of a case? Well, so the four main Independent Felony Purpose cases, I believe, two of them are mob action. One was egg discharging and some other offenses, and one was battery. The mob action was the beating. Those were Davis and Davison. Sure. They had not addressed second degree murder. You really shouldn't have to. The precedent already exists. The labels in Draper really kind of get at what you're talking about. They talk about how you don't have any intent to commit a crime when you're actually not going to commit a crime. That's where we kind of have a difference here. He has this intent before anything is getting started where he's going to take care of anything if he sees fit. I think there was just more background. That wasn't the crime that was charged. It was still on the record. I'm just saying I don't know that this is Figueroa. I certainly don't see this as the Morgan case or the Baby case. And I do kind of feel like these verdicts are a little inconsistent. So wouldn't the appropriate thing to have been done here was to send it back to the jury room if they're inconsistent? Well, I agree with you, Your Honor, that when the inconsistent verdicts were received, they should have been sent back to the jury room. So when the court didn't do that, what does Porter tell us to do? That you should reverse on all counts. And send it back for a new trial. Correct. Now, what's your position on which counts? So I believe that it would go back on second degree murder, felony murder, and egg discharge. That's correct. There's an instruction, committee note to instruction 7.01S, where they basically say at that point the state will have to concede the mitigating factors because they were found originally. Yes, because it's like a finely knackered on the counts one and two. Yes, Your Honor. All right. Yes, Your Honor. What about the new case, which I think it was appropriate that you brought it back to the jury room? And this Leffler decision. Now, in that case, Justice Carter says that there is no inconsistency with the felony murder in that case and the second degree. And so they affirmed where that trial judge sentenced on the felony murder. How would you distinguish that? Yes, Your Honor. To be honest, I don't really understand the decision in Leffler. I think it was based on inaccurate recitation of Porter. Yes. I don't think they can actually come to that conclusion based on Porter. I think it's in contradiction. And you do point that out, that in Porter, the Supreme Court didn't really suggest that the second degree wasn't inconsistent with all three. Correct. They actually said, like, and three and four. And four was the felony murder trial. And then they framed the case as the murder of one person could not be both first degree murder and second degree murder at the same time. Right. And so that's really what we have here. We have a felony murder guilty. Yes. And we have a jury saying he's guilty of second degree murder, and there's only one victim that's dead. Correct. So your position is clearly as a fallback that this is, they are inconsistent. It should, if we don't reverse and just enter the verdict on the second degree. Yes, Your Honor. And a new trial would be certainly in order under these things. Yes, Your Honor. And, like, I was trying to set forth sort of a chain of relief, and I believe that's correct. If you do not reverse on argument one, find that the felony murder itself should be reversed, then it needs to go back anyway. Prisoner's argument two. Prisoner's reporter. Yes. Defining language reporter. All right. But I believe we engage in the independent felonious purpose argument. But our position is that basically why he fired the gun was the fact that he believed that he needed to defend himself. Yes. And that's what the jury found. He knows he didn't stop by for tax. He simply fired a gun for some other purpose. So isn't this case a little like Tony? Because in Tony, the judge refused to give imperfect self-defense, refused to give self-defense. So the court, in that case, sent it back for a new trial so that the defendant could be given those instructions. And then I think in Figueroa, I think the jury considered imperfect. That's right. So what we have here is we've got like a decision that's similar to those cases, except in this case, the jury came back with, to me, what certainly is arguable to be very inconsistent verdicts. But in these other cases, they got the imperfect, they got the self-defense, but they found they ruled against the defendant on the second degree. Yes, Your Honor. So. Okay. Now, you've asked for other instructions. Yes, Your Honor. And just briefly, you mentioned Olalos and Drakeford. Oh, yes. That's right. That's an alternative reason. You know, they really did, they expressly feared this idea that felony murder would be used to replace second degree murder. Then they said that you should enter a judgment on the statute that covers in detail the act in all of its relevant aspects. That's what they said in Drakeford. And that's because when you commit a second degree murder, you're spurred or forced into the act. The only reason I want to say that first is because that goes to the instructions issues. Yes. What was the disposition in Drakeford? In Drakeford, they ended up, the final disposition, what they found was that they should have entered a judgment on felony murder instead of armed violence. But the specific relief given, I don't recall exactly. I can find out on rebuttal. I have it with me here. But the end result was that the armed violence was not properly entered judgment on. Is there a layoff? A layoff had an armed violence conviction and what was then called voluntary manslaughter. So a layoff was armed voluntary manslaughter by the time Drakeford did a second degree murder. Okay. So a layoff had convictions for armed violence and for voluntary manslaughter. Correct. And they said that armed violence could not stand in the face of the second degree murder. I'm sorry. So a layoff was armed violence predicated on voluntary manslaughter. And then in Drakeford, it was felony murder predicated on something else and there was concurrent verdict of second degree murder. And they found that because there was an act inherent in the second degree murder, even that could not be used as a predicate because it was an act of second degree murder, even though it wasn't literally charged as second degree murder. Do you think the felony murder statute was meant to cover situations involving innocent bystanders? I do not by any means want to question Figueroa or any of those cases. I think those are fine. What's the difference? Isn't this an innocent bystander? The distinction is that he fired at the van with the intent to defend himself and that intent to defend himself transferred to Darius. So it really doesn't matter if there's an innocent bystander when you're acting in self-defense, but I thought you don't get self-defense for felony murder. This would be imperfect self-defense as well. Right. Imperfect self-defense is a defense to murder, a knowing murder, or knowing that you're acting to create a strong probability of death. But it's not a defense to felony murder. So if we're purely focused on the Arrayos and Drakeford line of cases and not the independent felonies purpose rule, which I think would bear on this in a different way, but with Arrayos and Drakeford, they did not concern themselves with whether or not the second degree murder could itself be mitigated. Were either of those discharges aggravated discharge or gang-related? I'm sorry, armed violence. Which one, McGee and? No, no, Drakeford and Alameda. Not that I'm aware of, Your Honor. No? So is there kind of a different sense? I don't believe so, Your Honor. I believe the basic facts come down to what the legislature put in when they put the second degree murder statute in. They did not concern themselves with the perhaps gang motive or something like that. It's just that they recognize that imperfect self-defense is a special offense that should be charged differently, that should be sentenced differently. Because when somebody's doing that, they didn't come into this with the intent to commit this crime. It was spurred by the circumstances. Right, but felony murder, the jury was instructed on the A and B type murders, right? Yes. All right. I mean, I don't know. This is a very unusual case. It's an interesting case, Your Honor. Very, very interesting. Certainly, very interesting. But our argument would be, and I truly believe in this, is that by the Drakeford and Morgan line of cases, the Supreme Court has made abundantly clear, has hammered home this point, that it wants to judge a secondary murder for acts of secondary murder. That's the overarching theme of all these cases. Except they didn't weigh in on bystander cases. Well, I don't know if any have been appealed to the Supreme Court, because I don't think those cases were the same factors here, because there wasn't a concurrent verdict of secondary murder. Yes, exactly. You've got this second-degree murder. They really shouldn't be making it back up there after Porter. And in Tony, they said you get to have these instructions, so we're sending it back. Figueroa, they had them. The jury didn't buy the second degree. But here, the jury came up with this. And let me ask you this. There was a special verdict regarding did he personally discharge the firearm. Yes, Your Honor. Do you recall if it sounds like they were asked, did he personally discharge the firearm in the commission of first-degree murder, or did it say something a little different? That would even make it a little more inconsistent, because if they were asked about personally discharging in the commission of first-degree murder, not that that's a verdict that just goes to the enhancement, but it would just be another inconsistency here. Yes, that would be indictment. So the felony murder indictment, personally discharged the firearm that proximately caused death. Was that the verdict or the, I'm sorry, I don't know what to call it, the form that the jury had to. Oh, no, that's the felony indictment. I'm asking what was the form. I believe the special instruction tracks the language that personally discharged the firearm that proximately caused his death for the 25-year add-on. Okay, but you don't know if it relates to an offense. That's what I'm curious about. I'll have to look in the record for the actual. I apologize, I don't have that information in front of me. That's all right, no problem. But I think it's unlikely it would specifically name the offense. I've seen a lot of videos. I don't think I've ever seen that. Yes, I think it would be unlikely too. But I believe we've already discussed Porter. Porter, once a jury has mitigated first-degree murder, second-degree murder, it is error to enter judgment on first-degree murder. The end result is mitigated to non-mitigated murder, and that demands reversal. Now, I'm sorry for delaying in getting to the instructions, but the requirements for state felony to meet an independent felonious purpose and a predicate felony for the felony was not predicated on an act of second-degree murder were also facts required for a felony murder conviction. The Supreme Court, and I'm sure you guys are aware of this, very recently very much said that questions of fact required for conviction must be presented to the defendant's jury through a priority in a number of cases. In this case, he submitted these instructions. The trial court actually initially noted that independent felonious purpose was a question for the jury and said this was going to be a really interesting question in this case. But then when the instructions conference came around, the judge changed his mind and denied the instructions, finding them confusing. First of all, he wasn't initially confused when he found this such an interesting question. In any event, that was not a valid reason for keeping the fact required for conviction felonious. Mr. Melchi, now they're going to say that this is purely a question of law and that the court would have to make this initial determination whether there was this felonious intent. What would your response be to that? Every single case that has analyzed the independent felonious purpose rule has done so close on a close analysis of the facts produced at trial. So there are other states that do it as a question of law. California, I believe, does it based on predicate offenses per se. You can't do it on robbery actions. You can't do it on some other kind of ambiguous offense. That's not what we do in Illinois. In Illinois, we look directly at the facts of the case. We look at whether or not there was an independent felonious purpose here. And that's what distinguishes a question of law from a question of fact. Well, so if we were to remand for a new trial, you would suggest that the court use the language from Morgan and Peltz. Is that language that the attorney suggested was taken from those cases? So I would add a qualified to that. So those are the instructions given, and the trial court found that confusing. If that remanded trial court still finds that language confusing, it shouldn't stop there. He shouldn't just say they're confusing and then just move on. They should work together to make them not confusing, to make it so it's an understandable question. There are definitely very complicated instructions that are given to juries, with refill cases, with all sorts of things. They can handle this. And I think, actually, the Davidson inquiry is very succinct, that whether or not he had a felonious purpose apart from the killing itself. And that's the Supreme Court's most recent definition. So you do think there might be a question of fact on that one? Felonious on a felonious purpose? Yes. Oh, certainly. So there's a question of fact, yes. Yes, okay. But you also believe that there wasn't one. Your first, strongest argument, or you believe, is that there is. . . Oh, yes, you're right. Yes. Arguing both sufficiently and. . . Yes, sure. Yes, sure. And this is an issue that's, to the extent this court is concerned, is also being litigated other places. But this is, it's a fact question required for conviction, and that's where it comes down to. And we're going to keep on having these arguments where one person argues they're questionable or whatever, but what it comes down to when we actually analyze it is you're asking what happened. When they, did the judge kind of think that by having the third issues instruction in aggravated discharge of a firearm that he wasn't acting with lawful justification? Did he think that that and all the other instructions kind of covered this? It's possible. Well, I've seen, frankly, I've seen decisions where, or trial courts have thought that. That's not true. I mean, the mens rea does not satisfy an independent forensic purpose. Simply because the aggravated battery had its own mens rea, that does not mean it had an independent mens rea from the killing. Felony murder doesn't have a mental state. You can't figure out from the instructions whether or not they have an independent forensic purpose unless you actually ask that question. All right. Now, you just mentioned that felony murder doesn't have an intent. Correct. So is there some semblance of reasonableness then in that decision by Justice Carter and his colleagues where they say these are not inconsistent? I don't think so, Your Honor. First off, I mean, based on the legal language of the court, which, you know, Justice Carter couldn't really rebut, they said that count four of felony murder was unmitigated, which it was. It was unmitigated. Now, that said, it cannot be mitigated, but nonetheless it was unmitigated. So by that fact, by that virtue alone, it's inconsistent, because that's not what the legislature wants. It doesn't want you to have your go-to verdict mitigated and then have a judgment entered on something else just because it exists, because it was pulled from the same conduct. Well, do they want bystanders getting shot? I'm assuming no. They would not. If this were a bullet that went into a house. That's right. Okay. Little girls watching television. That's right. She's killed. It's troubling. It's troubling. It is. I agree. It's very troubling. It's been a troubling idea, but this is a very old idea of a bad-aim situation. Except that Morgan and Peltz and Davison and Davis aren't really dealing with this troubling, very troubling situation. If there had been a three-year-old in that car. That's right. We can't. The law doesn't recognize this sympathetic. But as Your Honor mentioned, these cases probably aren't supposed to make it up to the Supreme Court, because Porter should prevent them in the first place. Any time you have this concurrent verdict, it should never go up. So then get it back to the jury. I mean, the judge should recognize the inconsistency immediately and send it back to the jury. And when and if he or she does not do that, according to the Supreme Court, the appropriate remedy is to... And as Your Honor is aware, the witness court remands for new trials should address the sufficiency of the evidence. Yes, of course. The proposition is it should at least be, to a degree, it would be felony murder. Second degree. Aggravated discharge of a firearm. I believe that's right, Your Honor. Those would be the new trial counts. And if you haven't looked at 7.01s, it's really clear in the committee note. It kind of lays out how that would all work. Because it's an interesting question how you would do a retrial on second-degree murder, because you have to prove it and then mitigate it down. Yes. It's unreachable. In addition, there is a self-defense issue here. These improper verdicts might also have been prevented if, as argued in Argument 3, the jury had not been misled by the instruction that a person is not justified in the use of force if he is committing an aggravated discharge of a firearm. And the state had not gone on to argue when he was shooting that first shot, at least, as aggravated discharge of a firearm. Now, I understand these are the IPIs, but this wrongly implies that the shots were differentiated, which they were not, by the state's indictments, and that the discharge could not be justified simply because it was a shot from a firearm. Didn't the state's attorney say that if you find him guilty of aggravated discharge of a firearm, nothing more he's guilty of doing? Yes, Your Honor. Even though they had to show the instruction told them differently without lawful justification? Essentially, Your Honor. I believe I agree with you. Okay. Go ahead. Sorry. But what the state said, and this is something that it comes down to, is there's a time or sequence element that's lost in these instructions. Because of the nature of aggravated discharge, which is different than so many other predicate offenses, which is essentially firing a gun, you need to be initially committing aggravated discharge, firing a gun without justification, in order to remove justification for the subsequent act. Also firing a gun, which in this case all came about as one part, one sequence of shots. Well, there's a little testimony that's not actually, the record's all over the place. It is. There is testimony that there were some shots and there were some other shots. There was testimony that there were 10 shots. There was testimony that there were 7 shots. There was testimony that there were 5 shots. There were 5 cartridge cases found. The bullet from the decedent's head was not ever identified as coming from that same gun, although there was firearms identification testimony that said that the 5 cartridge cases were fired from the same gun. But in terms of the shots, there is no, I mean, there's testimony that they weren't necessarily in succession. As Your Honor knows, there's some differing accounts. Sure. Differing accounts. But. The actual facts are different. Yes, Your Honor. Okay. In my, I would argue the overarching narrative between the witnesses was that the stand came down, everybody freaked out, and he fired shots in response. There was some defense witnesses who said there was some shots fired from the van and some other things. There was, wasn't there? Yes. There was testimony that there were some shots fired from that van. Correct, Your Honor. Isn't that telling? Your Honor, first of all, I would say that that testimony was not believable, but it didn't seem to really fit with the rest of the witnesses' testimony. Okay. But also, I mean, the jury found an intentional murder. It was found in July. So, I mean, the jury thought he shot him. Anyway, returning to this self-defense issue, the result was that when the jury reached the proposition, there was a mandatory presumption. It removed the element from their consideration. They found that they could not, it made them think that aggravated discharge could not be justified because of the aggravated discharge. So, as I take your point on that, the purpose of that jury instruction is in the more maybe classic case of felony murder where if somebody begins a forcible felony and starts an emotional series of events, that if there is a reaction to that, he can't claim self-defense if he kills others. If he robs a bank and a security guard pulls a gun on him, he can't kill a security guard and say, ah, I acted in self-defense. Exactly, Your Honor. Or if he breaks into a house and a parent comes down with a gun to protect his family and he shoots the guy because he had a gun, he shoots the parent, he can't claim self-defense. That's exactly right, Your Honor. Okay, and you're saying this is not that case because this is also just one instantaneous sort of event. Yes, Your Honor. But what, I understand that argument and it does seem to be a confusing jury instruction, but what are we supposed to do about that? What rule of law do we rely on or what rule do we carve out that says why that's not okay? So answering the first question, I believe what you would do is you would add a time element to it. You would say something to the effect of, so a person is not justified in the use of force if before committing a felony he's committed an aggravated discharge of a firearm. You have to add some sort of sequence, something that before he did it that he committed a felony, not just that he's doing it during the felony and also it is the felony. Now, so far as the rule, I mean, the trial court has a duty to instruct properly on the law and even in the face of IPIs, the trial court must do so. So it's just a proper statement of the law, I believe, that this trial court could reverse on that basis. Yeah, I'm just having trouble understanding. I mean, if you, one argument the state has is if you follow that jury instruction. I admit it's a weird jury instruction in this case. It says he's not justified in the use of force if he commits the act of aggravated discharge. If you look at the definition of aggravated discharge in the instructions, it doesn't say anything about justification. If you look at the issues instruction, it does. Yes, Your Honor. So if they went to the issues instruction, it's the third element of aggravated discharge in the context of this case is that it is discharging a firearm in the direction of another without justification. Yes. And the jury instruction says you're not justified if you commit aggravated discharge without justification, which seems like a rather odd thing to say in this context. But it's not technically incorrect. It's, so if you look at, I agree with the proposition, it does mention justification, but it's, there's, you know, this court has found in various purposes that one instruction, they're supposed to read the instructions as a whole. And if this one leads them astray and basically removes that element, you know, returning to this mandatory presumption language, then since they're reading them together, they can't really reconcile that. And getting to this court's getter decision, the question is what was the most logical and coherent conclusion they could come to. And we would argue that in this case that it was that they could not find this aggravated discharge was justified. They could not find the felony murder. The predicate for the felony murder was justified. What about the doctrine of lenity? I believe that would also apply in this case, Your Honor. Pardon me? It would certainly apply in this case, Your Honor. Well, what does that mean then? You know, in terms of case law, if someone is found guilty of, the jury returns a general verdict and they're charged with intentional and they're charged with knowing and they're charged with felony murder. Which one does the court enter its finding on because it's the most serious of the three? Intentional. Okay. So here we have a felony murder and then we have the second degree. And what if the jury was giving him some relief by not finding him guilty of murder in the first degree? Is there a possibility that this verdict represents some form of lenity? You mean by like... By they didn't enter, they didn't return murder intentional. They didn't return murder knowing that it actually created the strong probability of death, the great bodily harm. Weren't there all three charges here? Yeah, the type A and type B. Yeah, so type A and type B. So they all went to the jury. So I certainly agree with you that lenity should apply in this case where the jury intended a lesser verdict. Now, I'm not sure if you want to talk about jury multiplication ideas. No, I'm talking about can you reconcile these verdicts as a jury exercising lenity? Well, I believe the jury found that he should be sentenced lesser and that judgment should have been entered on the jury's finding as such. I'm sorry. Maybe I'm not articulating it. I apologize. Counsel, I want to take you back to something you said before when we were talking about the possibility of reversing. Yes, sir. I'm sorry. Remand. Yes, sir. New trial. Yes, sir. And you said the new trial would be on second degree and felony murder. Yes, sir. And active district. But if the jury finds the defendant guilty of second degree murder, under your argument that you're making today, could they also convict him on felony murder validly? No, Your Honor. Under quarter, those would be inconsistent verdicts. So I believe on remand I would highly suggest that this court give these instructions that would prevent this. Yes. This kind of felonious purpose and perhaps some way of insuring the jury of the second degree murder requirement. I'm going to remand this for a new trial, pointing out that, and I'm not saying, we haven't even heard from the state yet. Yes, Your Honor. If we were to do that and point it out that quarter instructs that when you have this seemingly inconsistent verdict, murder in the second degree, felony murder, that quarter says send it all back for a trial on all the charges. Now, the state's going to say, you know, first degree. You say second degree and felony murder only and aggravated discharge is violent. Yes, Your Honor. And I believe, to forward that point, I believe the case law, to the extent that they have any bearing on this, the committee notes from the IPIs would support our position. Right. But you are right, Your Honor. The same problem will happen again and again until we fix these instructional errors. Okay. So can I take you back? I'm sorry I'm making you jump around. Back to this jury instruction. The person is not justified in the use of force and he commits the crime of aggravated discharge or violence. So that's an IPI instruction, right? So we're not exactly in a terrific position as an appellate court to say this is a dumb jury instruction, right? We're not very likely to say this doesn't accurately state the law. This is our Supreme Court created this. I agree with you that this doesn't seem to be the perfect context for it. That that seems to be more in a different context where a felony, a forcible felony begins and then while in the process of things happening somebody claims he kills in self-defense. But I'm still struggling to see how, given that you could literally refer to the issue's instruction where it says no justification and have it be a kind of a redundant maybe jury instruction but not wrong. And given that it is an IPI instruction that at least on its face accurately states the law, how could that be a plain error here? What is the principle of law we would say? You would want us to say it's just not appropriate under the facts of this case because this is a different sort of forcible felony? Either a home invasion or arson or a robbery? I would say it's under the facts of this case. And, you know, that goes for the closest balance problem. Actually, I would like to very much clarify, it's definitely the facts of this case. Ag discharge, this could work for ag discharge in one such as what we were just talking about with Figueroa and these other cases. Tony's. Tony's. You know, an ag discharge could be a kind of case. Okay, so can you cite me any case law that would say what you just said? That given the facts of this case, that IPI was inappropriate. What I can say is that it denied him, I can say under each problem of plain error basically I can say it denied him a fair trial and I can say that I guess it's closely balanced. And I would point to this court's Scatter decision where it did something very similar. You know, Porter sent it back for a trial on all charges. Yes, Your Honor. They kind of, they didn't say no first degree. Did they? They did not. But, I mean, I think it could be implied from the fact that the Supreme Court since then has sort of clarified by committee notes what it intends to happen. If you look at the sort of the evolution of post after they instituted the second degree murder 1987, I believe, they were kind of confused for a little while on how, what you do with a remand and there was a couple of cases that first they said it was double jeopardy and then they said it was collateral estoppel and then finally they put in the committee note that when you put it back the state should concede the mitigating factors and just try it on whether it was intentional or not. But the committee notes aren't actually announced in the Supreme Court, are they? They're just committee notes. Your Honor is correct, but they are the Supreme Court's IPIs. But you are correct that we're not buying in precedent. So if we were to remand for a trial of second degree murder and felony murder, it seems to me like based on your position the first thing you do is you move to dismiss the felony murder claim. I certainly would and a trial counsel did that in this case. Right. I don't even see if I, I mean how would that even work? I mean your point would be that they would, you can't try intentional murder. You can't try for strong probability murder. Not by themselves. Not by themselves only. And you're saying the defense would have, that the state would have to concede the mental state? They would have to concede the mitigating factors. The mitigating factors. Yeah. That's just how it does. So it would be second degree or nothing with regard to that charge? With regard to that charge, yes. So it's really. So they'd have to prove the charge. They'd just have to prove that there was a shooting. They could prove that there was an intentional shooting, which. Yes, correct. Correct. Or no. So what's the basis for the dismissal of felony murder on a retrial? I thought your Honor was referring to moving to dismiss the charge based on independent felonious murder. Maybe I was mistaken. Yeah, no, that's right. It would be your first argument here would be. Independent felonious murder. A motion for a directed verdict or. Oh, all right. That's what I was referring to. But you did ask to remand multiple times in your brief, don't you? Yes, we should. It just seems complicated. You know, this is factually different than other cases. If we don't. If the self-defense and the imperfect self-defense instructions aren't given, the case is improperly tried and there's error. The difference in this case is that the jury did not accept for whatever reasons. We can't decide or determine why they came back with those verdicts. But if the judge doesn't give the imperfect self-defense and the self-defense instruction based on these facts, that's a problem and that's error as well. But they did. The judge gave all of those. This jury did something different than Figueroa, McGee, and the first one. I forget. If you don't have anything further, we'll use the time for your rebuttal. Thank you, Your Honor. And now we'll hear from Mr. Levitsky. Good morning. Good morning, Justice, and may it please the Court. Again, my name is Brian Levitsky, Assistant State's Attorney on behalf of the people of the state of Illinois. On May 29, 2010, the defendant appointed himself security for this gang party. In furtherance of that role, he brought with him a four-loaded semi-automatic handgun. He started drinking alcohol and when someone said, on that band, he fired at least five shots in the direction of the moving band. Darius Murphy, an innocent bystander, was killed. This case is about felony murder, and the purpose of felony murder, the policy that drives it, is that when a defendant commits a forcible felony and any individual is killed intentionally or accidentally, it becomes murder. And that's what happened in this case. But not when those facts arise out of or are inherent in that killing. Isn't that true? That is correct. And that is a rule that came down from Oregon. But in this case, the acts of shooting at the van formed the basis of the forcible felony. It was a separate killing of the victim, Darius Murphy. Let me ask you this. How can you say there's like a separate killing in this case? You have one victim. He's dead. And the jury concludes that the defendant is guilty of felony murder, and the jury concludes he's guilty of second-degree murder. That is correct. And he's found guilty of aggravated discharge of firearms. Now, are you telling me that there's nothing inconsistent about finding felony murder and second-degree murder? There's nothing inconsistent when we look at the elements of second-degree murder, which is first-degree murder, plus the mitigating circumstance. In this case, an unjustified belief in the need for self-defense, and felony murder predicated on aggravated discharge of a firearm. Porter said that when you have the presence of a mitigated and unmitigated finding, that that is an inconsistency. Yes. Didn't they direct that then this case gets sent back for a new trial? What the judge should have done in this case, as in Porter, was tell the jury, you can't reach these two verdicts. Go back and deliberate. You have all the instructions. And then it could have actually conferred with the lawyers to see if they could come up with something else. How do you have a second-degree murder verdict and a felony murder verdict and say that those aren't inconsistent?  Yes. It wasn't specifically denying the intentional and the strong probability to note that the elements between first- and second-degree murder were consistent. And what it said was that it was reversible error when the jury finds that one of those types of killings was mitigated and that it wasn't, to then dismiss those accounts and enter conviction on felony murder. But in the context of felony murder, when a defendant has mitigating mental state, that's a finding that the defendant had an unjustified belief in the need for self-defense. It is not inconsistent with the underlying personal felony for which the defendant could have offered a perfect self-defense claim. And with respect to the fact that the victim's various markers died, it, again, is not inconsistent with that element. And so the inconsistency between first-degree murder and Porter was only between the first and second counts on one hand and the third count on the other. Did the Porter case really say that? Did they dice it up like that and parse it out and say, or did they just say these are inconsistent? One and two, I think, in the second degree, and then three and four, guilty but mentally ill. First degree. I'm sorry. The court didn't really distinguish, did it? It just said, this is a mess, send it all back. The court did not distinguish, but in the same token, its focus was on the offenses where the elements were similar, which were the first, second, and the third. And so its reasoning is inconsistent with the literal statement that the first and the second are inconsistent with the third and the fourth. And that is the reading that the Loeffler court recognized when it noted that the Porter decision said it was possible when you have the mitigated and unmitigated circumstance present for an offense that the second degree statute says can be mitigated. Felony murder cannot be mitigated. The second degree statute specifically says it only relates to the knowing intentional or strong probability problems of the first degree statute. But the confusion here is that as far as the victim goes, there's only one victim. And the jury found that there was mitigating circumstances regarding the killing of that victim. There is no other victim. So, I mean, this is a very unusual factual setting. You have one victim. The jury said that he had the right, the unreasonable belief in the use of force against the victim. So they found that he was guilty of second degree. But then at the same time, that same and only victim, they said he was guilty of felony murder. That is correct. And that's not inconsistent. Based on the reasoning that the Porter court conducted. And instead of its observation that there is but one crime with first degree murder, and looking closely at the elements of knowing intentional and strong probability and felony murder as it was charged in this case, they were not inconsistent. And, again, in recognizing that these were. Well, then why doesn't the defendant get a verdict on the mitigated second degree? Why should the judge allow the felony murder to stand when the mitigated offense is less punishable under the law? The mitigated offense, second degree murder was a class one offense. The greater offense was felony murder. But the jury found that as far as killing that particular victim, it was mitigated. That's correct. Doesn't he get the benefit of that? In the felony, not in the felony murder context. Why not? Because the defendant was committing a forcible felony for which the mitigating factor was irrelevant. And in committing that forcible felony, shooting the gun in the direction of the driver of the vandit, whoever else may have been inside of it, he killed Darius Murphy. How can you say that the mitigating factor was irrelevant? I mean, the jury didn't find it to be irrelevant. To clarify, in the context of felony murder predicated on aggravated discharging of a firearm, the defendant debates as a defense that he was justified in committing aggravated discharging of a firearm, and, therefore, he did not commit felony murder. But to say that he had an unreasonable belief in the need to defend himself when he committed aggravated discharging of a firearm and Darius Murphy died, the mitigated mental state simply does not provide the same defense as the perfect self-defense defense. But isn't that the crux of the whole problem here in this case, is that they find it to exist in one finding and not to exist in the other? Well, one thing that separates this case from Porter, again, is that in Porter you had strong probability, which was found to be unmitigated, and the moment of intentional, which were found to be mitigated. Here, Type A was charged as knowing, intentional, strong probability, and the jury didn't, like in Porter, say that there was a known or intentional first-degree murder, which was mitigated, and there was a strong probability that it wasn't or the other way around. Counsel, let's talk about Morgan for a second, and Davis, and I won't speak for Justice Collins, but at least that's what I thought she was talking about, was the inconsistency where we have a jury finding of second-degree. We have a jury finding of a mitigated fact, and our legislature has said, if you find that mitigating fact, you can't convict him of first-degree murder. It's only second-degree. And so this person only gets second-degree murder, and yet, because there's a predicate felony that does not allow imperfect self-defense, right? Only murder gets imperfect self-defense. No predicate felony does. That that would allow, in the Wright case, like this one, to convict, even though they found imperfect and must reduce it to second-degree, they can not apply that to the predicate felony, and thereby convict him of first-degree murder under felony murder. I mean, didn't Davison, even after the state asked them to abandon this idea, continue to stand for the proposition from Davis, from Pell, and from Morgan, that we're not going to let that happen? That if you couldn't prove it, you can take a shot. Sure, maybe you properly charged her. Maybe. But once the jury came back with second-degree murder, he could not be convicted of any first-degree murder. And to allow that to happen is allowing people to basically avoid, eliminate, avoid the second-degree murder statute. Now, why is that concern not present? The concern isn't present because, unlike a case like Morgan, where you have the defendant who shot the one grandfather and had a mitigated mental state, and then shot the grandmother when she was attempting to flee, we had that finding that the killing was inherent, that the underlying predicate felonies were inherent in the murder itself. But here we have the case where it's an innocent bystander, and we have a case where a defendant is firing at least five shots in the direction of at least five people, the person who's driving the van. And so we have a case that even in light of the finding of the mitigated mental state, we have an aggravated discharge. So hold on. We think it's probably about five shots. We know there were five cartridges or whatever found. And yes, not surprisingly, witnesses have different tastes. But let's just, for the purposes of our discussion, say there were five shots. As far as I understood the evidence and the state's argument throughout this case, from day one until now, every one of those shots was intended to shoot at the occupants of the van. Do you agree with that much? Yes. Okay. That's how I don't see how we couldn't agree on that. Okay. So every one of those shots was taking an unreasonable self-defense. It was taken with the subjective belief of self-defense that that was unreasonable. Correct. So how is the concern in Morgan? I know the facts in Morgan are different. There was just one person there, right? Right. Only one target and one person. There was no innocent bystander. But how is the reasoning from Morgan not present here? Every one of the shots he took was mitigated. And yet one of those shots killed this kid. That's true. So you're taking an act that was found to be mitigated and only punishable with second-degree murder and punishing his first-degree murder. That is correct. But in Morgan, the fact that the victim of the killing was also the victim of the forceful felony and the fact that the forceful felony only arose out of the murder does distinguish it from this case. And even though every shot was fired with the unjustifiable belief in the need for self-defense, that the defendant still did cause death for various reasons. And even in light of the mitigating factor, the statute doesn't prohibit for the purposes of the indictment and the charges that the defendant was facing that the statute made it unavailable. Well, there is no imperfect self-defense. There's no self-defense to felony murder, is there? Only if the defendant can show that the underlying forceful felony arose out of it. Right. So your position is basically that the fact that this other young man sitting in a car was struck by a bullet, that the facts show that the fact that the bullet hit him did not arise out of it. It wasn't inherent in shooting him because the defendant was actually shooting in a van, trying to defend himself against people in the van. Yes. And the purpose of the felony murder rule in this instance is perhaps executed, or that that purpose is demonstrated in this particular case. Because if you just take the bullet that strikes him, the jury could conclude that that bullet wasn't inherent, that that shooting wasn't inherent in this particular killing because his actions were actually directed at shooting at someone else, be it, you know, because he was defending himself or because he unreasonably believed that he could defend himself against the people in the van. But that has nothing to do with how the bullet got into this young man's head. You still say that these verdicts are not inconsistent. The verdicts between secondary murder and felony murder were not inconsistent. Well, if we were to conclude they were inconsistent and that the judge should have sent them back to that jury room immediately with some instructions, which does happen. Sometimes juries actually find guilty of second degree and guilty of first degree. Or they come up with whatever. Now, if we were to remand, what is your position as far as the charges that would be tried on a remand? And not just quarter. Let's remember we're looking at a whole body of law, not just quarter. Counsel says it goes back to second degree, felony murder, aggravated discharge of a firearm. Why don't we do that? If we remand. Again, if the problem is inconsistent, the jury should have an opportunity to determine whether or not the mitigating factor was or was not present. Because when they find that second degree murder, they have essentially found no first degree murder A. You don't get to retry him when they've made a determination that that was second degree, do you? Isn't that like a non-guilty? In the case where the defendant is found guilty only of second degree murder, and then is retried on that count, then second degree murder would be the only available charge in the next case. So isn't that the answer to the question? Felony murder is not murder 1 and 2. It's 3, 9, 1, 8, 3, or whatever. Correct. So why did you get to go back on the first degree? Because if the jury verdicts I read to say that there was an inconsistency, then it is saying that that mitigating factor was not present with respect to felony murder, and Porter was concerned that the jury... But the jury wasn't allowed to say there was a... I mean, the jury, from what I can tell, did their job here. I just think... I mean, the jury was not told that they could consider... They were properly not told that they could consider a mitigating factor. You could consider self-defense to aggravated discharge, but you cannot consider imperfect self-defense. So they were told they had to find that he didn't act in self-defense, and they didn't find he acted in self-defense, but they were never told they could reduce it because they couldn't under felony murder. Correct. They did their job, but the result, the defense is saying, it's not that they're not criticizing the jury. They followed the jury instructions. It's that the result is that you have a jury finding, as Justice McBride said, a jury finding of a reduced culpability mitigating factor, and yet you still have a first degree murder statute, or conviction, I'm sorry. Well, you have a felony murder. Big, big difference. We cannot blur them, I don't think. Right. But maybe I'm wrong. I think there's a distinction between, you know, one, two, and three, but particularly felony murder versus intentional and knowing, you know, knowledge that your act creates a strong probability of death. Correct. I don't see this consistency. I don't see how they're consistent because you have one victim, only one, and the jury reached one conclusion saying he was, there's a mitigating factor, and then at the same time they found him guilty of felony murder, but it's not a different person that was killed. It's the same person. It is the same person. So I don't see how these verdicts are consistent. Again, my position would be looking at the reasoning of Porter and the elements analysis of it, and in the case of the defendant, say there's additional authority. But we're not found by the third decision. Of course, this court is not found by Loeffler, but Loeffler provides a correct analysis of Porter, noting that the concern in Porter was a finding that first-degree murder, which could be mitigated, was found, and also the first-degree murder was found to be unmitigated on 9-1-1 A and B, and so finding that that was a reversible error was enough to send it back. If you had a new trial, the jury would make the determination whether or not that fact existed, and therefore it was not necessary for Porter to continue to determine whether or not the elements of felony murder were inconsistent with the finding of second-degree murder. You know, the Drakeford and the Alamos case, is the only way you distinguish those by basically saying that no felonious intent, that there wasn't the same question we have here? How do you distinguish those cases? One was under the old statute and one is under the second degree? Right. And those were, again, cases like in Morgan where there was an underlying predicate of felony, which was clearly against the same individual for whom the armed violence statute was applied. This is a case where we had two victims. We had the people in the van that the shots were fired at, and we had Darius Murphy who died. And so what Floyd recognized after Alejos and Drakeford was that when you had even closely related shootings with different individuals, that the mitigating mental state would not transfer from one person to another. What if the bullet shot someone in the van, and it was a little baby sitting in a, you know, car seat? Would the result or reasoning or what should happen here be different? Because if he gets to use the self-defense as far as shooting into the car, but isn't there a case like that where the woman was sitting right next to the, is that Davidson or? That might be Rosenthal. Oh, Rosenthal. The woman was. Well, why isn't this like Rosenthal? Well, one thing considering the Rosenthal court was that the predicate's felony charges the victim, the individual who died. So unlike that case, we have charges and convictions against the person, the van to which the defendant was firing the shots, as well as the felony murder charging that the victim was Darius Murphy. The funny thing about aggravated discharge is that all you really have to say is that they shot it in the direction of another person. And unless you're talking about a murder where it's just you and the victim in the room, there's likely to be somebody else around. It seems like if I pulled out a gun and wanted to shoot you, no offense, but wanted to shoot you, and there was someone standing next to you and I shot, I missed. I was aiming at you. All the evidence shows I was aiming at you, but I hit the person next to you. Under your theory, I'm guilty of felony murder because I discharged a firearm in the direction of you, but I killed him. But if it was just you and I in the room, or if it was just me and the person who got killed and you weren't there at all and I just shot him, you cannot, under Morgan, convict me because the act of shooting him and the act of discharging a firearm are inherently the same thing. So what is essentially the exact same act, by happenstance of there being another person there, can be either... If I were to add in to this that I had an unreasonable self-defense argument, then I would be, depending on whether there's another person there or not, I could either get second degree or first degree felony murder. Just because I missed. This is Morgan with the miss, isn't it? It is distinguishable from Morgan because the victim wasn't being... Because of the miss. Yes. Because I missed a shot. That's the only difference in the act. If this were, under Morgan, my shooting you was inherently the same act. I can't be convicted of felony murder if I miss and hit somebody else. Just like in this case, if the defendant had shot someone in the van, he'd be just convicted of second degree murder right now. We wouldn't be having a conversation about felony murder. Because if he was a bad shot, that was a first degree murder. Well, that is correct under this case because felony murder includes accidental, unintended, as long as they're directly foreseeable, people who can die. Absolutely. But in this case, we have a jury finding of imperfect self-defense. That's the point I'm trying to make. That's the difference. I mean, the courts have talked about the armed violence statute and they've talked about the felony murder statute in the context of deterrence. We have felony murder because we want to deter the forcible felonies from being taken place at all. And we say we dislike those things so much and we want to create such deterrence that even if someone accidentally dies in the course of that felony, you're on the hook for it. But the court has also said second degree murder is not deterrable. You can't deter unreasonable self-defense. You can't deter provocation. You don't plan those things in advance. So there's no way to deter them. And that's why the Supreme Court has said we don't like having a second degree murder conviction elevated into a first degree by virtue of felony murder. Isn't that the whole reason for Morgan in those cases? Because the deterrent effect is utterly lost in that context? In Morgan, at least with respect to the grandfather, that would be correct. But, again, this is a defendant, in the facts of this case, this is a defendant who had appointed himself to the security for this party. He armed himself with a four-load gun. He had either alcohol or marijuana in his system. And when someone says, I'm not done, he starts firing at it. The jury heard all of that information and decided that it was imperfect self-defense. But in the facts of this case, there are several steps the defendant made which made it still deterrable with the automatic elevation of the offense to first degree murder. Well, in this case, Jim, the trial judge determined that the second degree murder conviction merged into the felony. Is that correct? Correct. So under your theory, and given that a trial judge would likely always convict on the greater offense, how does second degree murder even continue to be viable? I mean, is it in any way eroded? Well, in the case where you have, if it was like Morgan where there was no independent felonious purpose and where the underlying felony arose out of and was inherent in the murder, then felony murder would be inappropriate and only a non-intentional strong probability murder could have been charged. And so in that case, second degree murder would still exist. Well, you know this whole idea about looking at the facts? The whole issue isn't looking at what the intent was, whether there's any felonious intent. I mean, Morgan says that if the felonious intent is really the same as he was trying to kill his grandfather, no question, but it was mitigated. And so because firing the gun was trying to kill him and then she was like an afterthought. And then in the baby case, it was clear he was trying to kill the baby. And by throwing the baby, that felonious intent of the aggravated battery was clear. Here, the first question is, what was his intent when he fired at the cop? Was his intent, what was his intent? Did the jury say it really wasn't felonious? I don't know. I don't think that Morgan or Pelt or Davison answered the question. I don't think any of these cases are like this case. This is, as this court noted, an interesting and unusual case for many reasons. But the court certainly has recognized in Morgan and Pelt and Davis and Davison that if we consider the felonious intent and it's the same as the intent to hit this other person, then the felony murder has to fall. Well, in the cases that we talked about earlier, in Tommy and Figueroa and McKee, we don't look at the intent of the purpose in the murder itself. We look at just the purpose that underlies the potential felony. And so we had this mediating circumstance along with his purpose or intent, whatever he was trying to do by firing those shots at the man. But then we have the accidental death. We have the what? The accidental death, Darius Murphy. Murphy? Yeah. That brings us to... Was there an accidental death in Figueroa or Tommy or McKee? Do you recall? I don't know. Was there a bystander in any of those cases? The victims in all those cases were bystanders. The common fact pattern was... Yes. And Morgan and Peltz and Davis and Davison and... I don't know if Alejos dealt with a gang shooting. I really don't recall on hand. I don't believe it did. If there are no further questions on the first and second issue, I'd like to suggest the jury instructions. Well, what did you say about... I'm sorry, about you think that you get a first degree, you get to go back and try them for first degree? If we were to remand this for another trial? Consistent with FOIA, which remanded on all four counts, and if there are inconsistent verdicts, then it would be because the jury found that the mitigating factor did not exist with respect to felony murder, and therefore remand for a new trial should be to determine whether or not the mitigating factor did or did not exist. If it did not, then consistent with FOIA, it would be appropriate to retry first degree murder. Well, if you got a retrial on second degree, wouldn't you still get to argue there was no mitigating factor? If there was no felony murder count in this case and it was only knowing intentional strong probability and the jury found second degree, then retrial would be on second degree. I think that's where the collateral is thoughtful. Yeah, but if we were to remand this, and I'm not suggesting that that's what's going to happen, but if we were, and it went back on second degree, and felony murder, and aggravated discharge of the firearm, don't you get to argue that there wasn't this imperfect self-defense? I don't know. It's really sort of strange because I'm not sure, like I said. I'm puzzled by the whole situation. But we're going to have to reach this legal issue sooner or later, right? I mean, if this were to go back with second degree and felony murder, you're still going to have the same situation where the predictive felony does not admit an imperfect self-defense instruction. The jury won't be instructed on it next time either. That's right. And so we're still going to have this thing. We're going to be going in circles, right? You're going to have to concede the mitigating fact on a retrial, right? You're just going to have to show that he killed him, basically. But you're not going to argue that it wasn't self-defense. You're going to argue it was second degree. With respect to the type A murder? Yeah. Well, you could always take the position that he's guilty of one thing and one thing only. It's felony murder. Correct. I mean, that would make sense from your standpoint. All right. Could you talk about this jury instruction about a person is not justified in the use of force if he commits the offense of aggravated discharge? Was that an appropriate instruction in this case, in the facts of this case? In this case, it was. And Justice Ellis, as you noted, the issues instruction for aggravated discharge had that third proposition, which said that the defendant was not justified in using the force which he used. And so earlier in the conversation about how does this fit in the temporal aspect of the jury decision-making process, in order for the first time that the defendant was committing aggravated discharge of a firearm, they have to have determined that he wasn't justified. And it logically follows that he wasn't justified, then that he was not justified in the use of force if he was committing aggravated discharge of a firearm. And so the instructions do- Well, what if the juror went from that instruction, which is a-I don't know, from that instruction to the definition of aggravated discharge of a firearm in this case? The definition of aggravated discharge of a firearm in this case said nothing about justification. That is correct. Okay, so if I went from that jury instruction to that one, I would read those together to say, you're not justified in discharging a firearm. Again, reading them side-by-side, though, the jury could have said that based on the definition, they knew what the basic premise of the offense was, but then they were instructed that they had to find three separate elements in order to find that he had committed the offense. And so reading them together, the jury would have had to have looked at this, thought about whether or not the defendant was justified. So the defense goes beyond, I think, just the conviction for aggravated discharge, which I don't think they even challenged, but the intentional murder and the strong probability case. Now, the defense at trial argued full self-defense, right? They didn't start with imperfect, that's all they got. But they wanted perfect self-defense. That's correct. And I think what they're saying is the jury obviously didn't let this defense out of court because they gave them half-way, right? I mean, this wasn't a completely implausible situation because the jury obviously fought it to some extent. And the danger that the defense is, and I'd like you to comment on it, is the danger here is that you read that and it says you're not justified in discharging a firearm, you're not justified in abusing force by discharging a firearm, and then if you're in this intentional and strong probability issues instructions, they had to find he wasn't justified. I think what the defense is saying is they thought they couldn't find justification. I mean, just focusing specifically on that instruction and the fact that it only said committing aggravated discharge of a firearm as opposed to first-degree murder, that again would be the instructions as a whole, and the... Correct. And the jury was also immediately following the instruction for aggravated discharge. They had the justification, their contract said that this is a defense instruction in five. A person is justified in use of force only to the extent he reasonably believes such comment is necessary to defend himself or another. And so that instruction was given in addition to the issues of instruction on aggravated discharge, and the jury did not find that there was a reasonable belief in the need for self-defense because they found guilty of first-degree murder. Were there separate instructions specifically with A and B and aggravated discharge of a firearm vis-à-vis the two different types of murder? My recollection is that... I don't have them in front of me. Yes. So was the issues instruction for aggravated discharge of a firearm the same for A and for B? The issues instruction for aggravated discharge of a firearm was its own separate instruction for type B, which was a felony murder. The issue, to my recollection, was just that the defendant committed aggravated discharge of a firearm. And so then that issue incorporated the... A. The A, aggravated discharge of a firearm. B, yes. Because you have to prove three things. Correct. Is there any inconsistency in that one, that they came back with an aggravated discharge of a firearm when it told the jury that they had to find he wasn't acting with lawful justification? Doesn't that further suggest the inconsistency in these three verdicts Does that further amend the specific question they were asked as well? No, because the jury could consistently find that he had an unreasonable belief in the need to defend himself, but not a reasonable belief in the need to defend himself. And therefore, the type A murder was mitigated. The type B murder was not because the unjustified belief in self-defense was not a defense to the predicate felony of aggravated discharge of a firearm. Well, sure, the jury could have done that. But I think the argument here is they're looking at jury instruction that, at least on its face, would appear to suggest that you are not justified in the use of force by discharging a firearm. I understand that if you go to the issue's instruction, you see no justification. And I can also say if you go to the definition's instruction, it doesn't say anything about justification. And we all know this whole case is about shooting a gun, right?  And I think the defense is saying that's a really unfair jury instruction. And I'm sitting here wondering, first of all, why would that be in here at all? This is not the classic felony murder case where somebody starts something and then there's a shooting. And then he says, well, I thought he was going to shoot me. And we say, no, if you're escaping from a crime, you can't shoot at a cop who pulls a gun on you because you thought he was going to hurt you. If you break into someone's house and someone comes down the stairs with a gun, you can't say, I thought he was going to kill me. We get that. And that's where I think this jury instruction makes all the sense in the world. But here, does it make sense? Well, the instruction doesn't just say that he's justified if he's firing a gun. It's that he's committing aggravated discharge of a firearm. And aggravated discharge of a firearm is very specifically in the issue's instructions, very specifically defined. And so the jury was not simply told that if he's firing a weapon at someone that he isn't justified. I know, but what's odd to me about this is in those classic cases of forceful felonies like home invasion or robbery, you can't really argue self-defense. We just said we're not going to let you do that. We're not going to let you create a situation and then claim self-defense. But here you can argue self-defense. You can argue self-defense to aggravated discharge. He did argue it. The jury thought it was at least a somewhat decent argument because they gave him halfway. And yet there's a jury instruction saying you're not justified in the use of force if you commit aggravated discharge. I mean, doesn't this seem like an odd place for that jury instruction? I mean, if we were to remand this, would you recommend that jury instruction be put back in the next place? It might not be necessary in light of the way that the issues instruction for aggravated discharge was tendered. Although reading them side by side, the jury was at least given the same general idea for it. And so they weren't legally inconsistent. If there are no further questions on that issue, I'll finally address the nonpartisan instructions that the defendant wanted to tender. The question of whether the defendant had an independent phonies purpose simply was not a fact for the jury to decide. And it's not an element of the offense. But it is in a factual situation like this one. And the trial judge said that he kind of initially agreed with that. The trial judge did initially agree with that. And maybe if the jury had been actually told that there's an independent phonies purpose, that they might have reached something that maybe seems a little more consistent than what we have here. But the proper way for a defendant to make the argument that there was no independent phonies purpose would have been to do what this court said in Colbert when it addressed the underlying felony offense of mob action. And this court said in resolving this issue, the trial court rather than the jury must examine the factual facts. Didn't the assistant state's attorney argue the more classic example of a felony murder where somebody's out on the street and they decide they're going to just take pot shots with a gun and they fire? And somebody that they had no intention of killing, a little child in a stroller, is killed. Didn't the state's attorney argue if you find that he committed aggravated discharge of a firearm, he's guilty of felony murder? Wasn't that argued? Yes. And isn't the aggravated discharge of a firearm definition that it doesn't include the unlawful justification? Correct? The definition instruction. Right. So if the jury took a look at the definitional instruction of aggravated discharge of a firearm and then listened to what the state's attorney was saying, they couldn't come to this conclusion regarding a felony murder because of that, couldn't they? If we only look at that one instruction and that part of the closing argument, then it would be possible. But that's not really a correct statement of the law under this factual scenario, is it? If you just say, if you find a guilty of aggravated discharge of a firearm and they look at the definition, that might make sense. But in this case, that's not a correct statement. Is it? It becomes correct when we look at that issue's instruction, which said that... Okay. I see your argument. Because they could not have found that he committed the underlying offense unless they had already determined that it was unjustified. Okay. So I'm going to read you a passage from the closing argument. I think some of this may have been in the briefs. This is the assistant state's attorney talking about aggravated discharge. And I think in the context of Type B felony murder. And the beauty of it is, as to the ag discharge, a person is not justified in the use of force if he's committing aggravated discharge of a firearm. Boom. Out. That jury instruction right there. I think we can take a guess at what jury instruction is talking about. When he's shooting, that first shot, at least, is aggravated discharge of a firearm. He doesn't get to use justified use of force. And that means he's guilty of felony murder, which is Type B. He killed someone in the course of a felony. Isn't that the nightmare scenario of that jury instruction? It is a nightmare scenario. But, again, we have to, at this point, look at the jury instructions as a whole. And every time that aggravated discharge of a firearm is used, even on heavy definition instructions. Not every time. Not the definitions. I'm sorry. With the exception of the definitions. When the jury was told, these are the three things you have to find. And when the people were arguing about the issues instruction, they talked about the third proposition. And so the jury heard both of that portion that was quoted, as well as some discussion about the fact that the defendant wasn't justified in them. They argued their theory that this was never justified in the first place, based on the theory of the case. And so, looking at the arguments as a whole, and looking at the instructions as a whole. So, isn't it inconsistent when the jury found he was guilty of aggravated discharge of a firearm without lawful justification, and at the same time, they found him guilty of second degree counts one and two? Or, you know what I mean, intentional, or knowing your ex-grievous drunk properly done. Again, the finding of an unjustifiable belief in the need for self-defense is different from the finding of a justifiable belief in the need for self-defense. And so, the jury, if they were asked specifically, do you believe that the felony murder was committed with an unjustified belief in the need for self-defense, they could have said yes, but the felony murder is statute. I'm sorry, am I not answering your question? No, no, go ahead. The felony murder statute does not provide for a separate offense when the offense is committed with some mitigating mental state not rising to the level of a justification. And if there are no further questions, for these reasons demonstrated in that brief, we would ask this court to affirm the defendant's conviction and sentence and modify his mitigants. Thank you. Mr. Melching. Thank you, Your Honor. You asked about the jail period relief. The relief in that case is they vacated the armed violence he remanded for sentencing and second degree murder. I'm sorry I didn't have that immediately. The school's argument, I won't get into this too much, I think we all know, is essentially, and I'm not trying to be too aggressive here, but disputing Porter is what it comes down to. Porter made an explicit holding and it hasn't corrected itself in 20 years. Another thing that came up, Reynolds and Drakeford said that you should not enter a more serious sentence over second degree murder simply because it has a greater sentence. And it's referring to something Your Honor asked about earlier with Argument 3, so far as plain error for the self-defense instruction. Another alternative way this court can reach that is in Tito v. Almond, constitutional issues can be addressed if there was a trial objection, which there was in this case, even though it was not raised in the post-trial motion. One other thing that's come up in this argument is that we've been distinguishing Morgan and Pelt as if they were less understandable, as if this one was somehow worse. But to be clear, in this case, those were intentional murders, essentially. And in this case, they actually found a mitigating factor. And something Justice Scott said, something you referred to, which I think also goes to this Porter problem, how are we going to deal with a second degree murder conviction that has an additional mitigating factor? It can't be put inside of a felony murder, first degree murder, and that's something this court's going to have to consider. I want to back up on Morgan for a second. Morgan had two things going on. Morgan had two victims, and the father, the grandfather, the shooting of the grandfather was second degree. Yes. Because that's where the provocation came in. There was serious provocation, second degree murder of the grandfather, and also felony murder of the grandfather. Right. But they had a problem with that. And then the grandmother, there was no second degree anything. She was doing the booming shutter in the back. So there were kind of two different things going on. If we want to call it the independent felonious purpose, or almost like the same act doctrine, something like that. As to each of those murders, they tried to say your shooting was predicated on the aggravated discharge of a firearm, and therefore it's a felony murder. And as to both, one with second degree, they weren't talking about second degree at all, the Supreme Court said no. Right. Okay. But then as to the grandfather, they made a separate holding saying not only is this an independent felonious purpose problem, but it also has the effect of allowing the state to bypass completely the second degree murder statute. I mean, do I have this wrong, or are those two different holdings from the case? Because I take those as two different lessons we've taken from the Supreme Court. Are they one, or are they two? Well, they're definitely different circumstances, so there's going to be a different logic applied. But I think, and I was going to actually say this separately, the thing that even though we're comparing to the facts in Morgan and Pell, what came out of that is a rule, and, I mean, they've really refined it in recent years to the fact that it's one sentence. And what it really comes down to is this time to depart from the killing. So, yes, I mean, there was definitely a different logic applied to different circumstances. Like in Morgan, the young man was actually defending himself against what he thought was the onslaught from his grandfather. And there's no question. He was actually directing his axe at that man. And the mother, the grandmother, was there. And so that was Morgan. Now, the Pell is the man who threw his baby at the wall. And there's no question in Pell that that man was actually directing his axe at that baby. Now, we're not in that situation when we take a person who is directing himself clearly at that van. He is shooting at that van. He is not shooting at some bystander in a car on the street. No question about that. He's not shooting at that person. Now, I guess the debate is, is this really Morgan? Because he was directing himself at the van, and the innocent bystander happens to be in the way, but his actions were directed at the van. So under Morgan, since his actions were directed at the van, somehow this other person is, is she the grandmother? Is the young man on the street in the car, is he the grandmother? He is the grandmother. And in Pell, is this person on the street the baby? Your Honor, so I believe in this case it would be the grandfather by transfer of intent. And I understand what Your Honor is saying. Do we have a transfer of intent with felony murder? With felon named murder. Or I'm sorry. With second degree murder? Yes. You can have unreasonable self-defense can be transferred to another. Yes, that's established. And that's really, you know, that's what has to happen. So under the state's view, if you've got an accidental bystander shooting, the state is allowed to argue transfer of intent, right? They're allowed to say we know you were shooting at this guy, but you shot that guy. We were intentionally shooting at this person, but we're going to transfer to this guy. But then when the defendant wants to come in with a second degree, he's got to convince the jury. If he convinces the jury, he's not allowed to transfer that. That's the sum of substance of what's happening by use of the creative pleading of felony murder. They're able to keep the, they're allowed to transfer the intent, but they're not allowed to transfer the mitigation of that intent. That's what the state would argue. Yeah. Let me ask you this. What does that word intent mean? Why do you get to transfer the intent? Is there something about that? Are we talking about intent or are we talking about different kinds of murder? We're in Illinois. We don't have any intent for felony murder. There is no intent ever. It has nothing to do with intent. I think that's actually kind of why they did the rule. I think it was to address the situation. They didn't want them to take advantage of that situation. So they did sort of put this independent form of this purpose rule, which is somehow related to intent. And they inserted it into it. And now it's back reported for conviction. Because they don't want the state to be able to take second-degree murders and charge them as felony murders. Well, do we take out of Morgan then that and the other cases, that felonious intent is important? Yes. If there is this other felonious intent. And then each case should be decided on its particular, peculiar facts. And then you decide whether or not, from the evidence, there could be this other felonious intent. I agree with you, Your Honor, that the question of an independent form of this purpose is a vast question. Is it a threshold question? Oh, yes. I absolutely think so. And is that what the First District did in these other cases? They have this threshold question of whether there was this other felonious intent. They evaluate whether or not there was an independent form of this purpose. And, you know, I know this goes without saying, but in Pell, they don't write reverse the conviction for a failure to prove this independent form of this purpose. So it is a sufficiency question, really, when it gets down to it. Yes. So you look at the facts. You look at the facts. But, you know, what's come out of these cases is this rule. And that's what you use to apply. And so that's what, you know, either the trier or fact of this Court in our view needs to look at. It's something interesting. I was just looking at the Porter-Olein. It basically said there's a new trial on all counts. It didn't actually say whether or not it was referring to every single count charged or the surviving counts. And, finally, the states have the proper way to deal with this is to ask the trial court to rule on it. I mean, Apprendi said the Sixth Amendment indisputably entitles a defendant to a jury determination of facts required for conviction. You can't. There's just no way to take that away from the jury. And that's what I have for you guys. So I appreciate your time. Unless there are any further questions, we ask for these reasons, and they'll stay in our briefs at this Court of those advanced convictions. Well, we thank the attorneys. This case was very well argued, very well briefed. And we will take it under advisement. Thank you.